53 So.2d 335

MOBLEY et al. v. LEE.

4 Div. 595.

Supreme Court of Alabama.

June 14, 1951.

Preston C. Clayton, Clayton, Chas. O. Stokes, Ozark, and G. D. Halstead, Headland, for appellants.

652

Crews Johnston, Clayton, and Lawrence K. Andrews, Union Springs, for appellee.

LIVINGSTON, Chief Justice.

On September 6, 1949, McDowell Lee, "for himself as a member of Pea River Electric Cooperative, an electric cooperative organized and existing under the laws of the state of Alabama, and on behalf of other members who may desire to join him herein," filed a petition in the circuit court of Barbour County, Alabama, at Clayton, seeking the writ of mandamus to compel C. G. Mobley, as president, and M. G. Armstrong, as secretary, respectively, of the Pea River Electric Cooperative, to execute a certificate of change of the principal place of office of the Pea River Electric Cooperative, designating Clio, Alabama, as such principal place of office, acknowledge the same, affix the seal of the cooperative thereto and file the same in the office of the Secretary of State, and in each county in which its articles of incorporation or any prior certificate of change of principal office of such cooperative had been filed.

The following were named defendants: "C. G. Mobley, as President, and M. G. Armstrong, as Secretary of the Pea River Electric Cooperative, and Sam K. Adams, M. G. Armstrong, B. W. Brackin, D. A. Easterling, Corbitt Eubanks, Wiley Griggs, C. G. Mobley, J. G. Sanders, and J. S. Whigham, as Trustees of Pea River Electric Cooperative."

The petition alleges that the Pea River Electric Cooperative is an electric cooperative organized and existing under the provisions of Chapter 3, Title 18, of the 1940 Code of Alabama, and that C. G. Mobley is president of said cooperative and M. G. Armstrong is its secretary, and that the other named defendants are its trustees.

The petition as amended further alleges:

"1. That Pea River Electric Cooperative is an electric cooperative organized and existing under the provisions of Chapter three, Title eighteen of the 1940 Code of Alabama, and engaged in supplying electricity and electrical service to its members in Barbour, Dale and Henry counties, Alabama.

"2. That your petitioner, McDowell Lee, was on the 13th day of June, 1949, and is now, a member of the Pea River Electric Cooperative; that C. G. Mobley is the legally constituted President, and M. G. Armstrong is the legally constituted Secretory of said Cooperative.

"3. That the following persons, Sam K. Adams, M. G. Armstrong, B. W. Brackin, D. A. Easterling, Corbitt Eubanks, Wiley Griggs, C. G. Mobley, J. G. Sanders and J. S. Whigham, are the legally constituted Board of Trustees of Pea River Electric Cooperative.

"4. That at a regular meeting of the Board of Trustees of the Cooperative held on May 25, 1949, a petition signed by more than ten percent of the members of the Cooperative requesting that a special meeting of the members be called for the purpose of selecting a permanent location for the Cooperative, with such selection to be a mandate to the Board of Trustees, was presented and filed. And in response to said petition a resolution was then and there passed by said Board of Trustees calling a special meeting of the members of the Cooperative to be held at 10:00 o'clock, A. M., on Monday, June 13, 1949, at the Blue Springs School House in Blue

Springs, Alabama, for the purpose of, among other things:

" 'The selection of a permanent location for the headquarters of the Cooperative, which selection shall be a mandate to the Board of Trustees.'

"5. That notices were mailed to all the members of the Cooperative not less than ten nor more than twenty days before the date of said meeting, such notices giving notice of the time, place and purpose of the meeting, all in compliance with the articles of incorporation and by-laws of the Cooperative, and the law in such cases made and provided.

"6. That there were present at said meeting in person not less than five percent of the members out of a total membership of approximately four thousand (4000); that the parties named in paragraphs 2 and 3 were among those members present and voting.

"7. That written ballots putting the question of the selection of a permanent location for the headquarters of the Cooperative were distributed to the members present in person or by proxy, all in compliance with the articles of incorporation and by-laws of the Cooperative, and the law in such cases made and provided.

"8. That the ballots were deposited in boxes provided for the purpose and were publicly counted before the members present and under the supervision of the Board of Trustees, all in compliance with the articles of incorporation and the by-laws of the Cooperative, and the law in such cases made and provided.

"9. That under the rules of the election as promulgated by the meeting and over which the said C. G. Mobley presided, and in compliance with articles of incorporation and the by-laws of the Cooperative, and the law in such cases made and provided, the town or community receiving the lowest number of votes was eliminated, and balloting had on those remaining, with the final result being that Clio, Alabama, received 1422 votes and Ozark, Alabama, received 1299 votes.

"Whereupon, Clio, Alabama, was declared by the said C. G. Mobley, who acted as chairman of said meeting, to have been selected as the permanent headquarters and principal office of the Cooperative, with such selection, according to the petition of the members filed and presented as aforesaid, and as provided by the resolution of the Board of Trustees calling such special membership meeting, to be a mandate to the Board of Trustees.

"10. That notwithstanding the results of said election, the said C. G. Mobley, President, and M. G. Armstrong, Secretary, of said Cooperative, have failed or refused to execute and file a certificate of change of principal office, designating Clio, Alabama, as the permanent location for the headquarters of the Cooperative, in the office of the Secretary of State and in the office of the Judge of Probate in Barbour, Dale and Henry Counties, respectively, as required by law.

"11. That petitioner is without any other adequate remedy to coerce compliance with the results of said election."

In short, the petition prays that the officers of the cooperative, its president and secretary, be compelled to change the principal place of office of the cooperative to Clio, Alabama, by executing a certificate of change and filing and recording the same as contemplated by Section 42, Title 18, Code 1940, or show cause, etc.

Defendants interposed demurrers to the petition which were overruled. An answer and other pleadings were filed in the cause, and on October 12, 1949, the trial court entered an order directing the Clerk of the court to forthwith issue writ of mandamus in keeping with the prayer of the petition.

It is our view that the petition was legally insufficient to support the court's order directing the issuance of the writ of mandamus and was subject to the demurrer interposed thereto. For this reason it is unnecessary to set forth or consider other pleadings in the record and rulings thereon.

654

As stated in the petition, the Pea River Electric Cooperative is an electric cooperative organized and existing under the provisions of Chapter 3, Title 18, of the 1940 Code of Alabama.

Section 36, Title 18, Code 1940, provides, in pertinent part, that articles of incorporation of a cooperative shall recite in the caption that they are executed pursuant to Chapter 3, Title 18, Code 1940, shall be signed and acknowledged by each of the incorporators, and shall state: the name of the cooperative; the address of its principal office; the names and addresses of the persons who shall constitute its first board of trustees.

Section 39 of Chapter 3, Title 18, Code 1940, provides, in pertinent part, that the business and affairs of a cooperative shall be managed by a board of not less than five trustees, each of whom shall be a member of the cooperative or of another cooperative which shall be a member thereof. The by-laws shall prescribe the number of trustees, their qualifications, other than those provided for in Chapter 3, supra, the manner of holding meetings of the board of trustees, and of the election of successors to trustees who shall resign, die, or otherwise be incapable of acting. The by-laws may also provide for the removal of trustees from office and for the election of their successors.

Section 41, Title 18, Code 1940, provides that the officers of a cooperative shall consist of a president, vice-president, secretary, and treasurer, who shall be elected annually by and from the board of trustees.

Section 42, Title 18, Code of 1940, provides as follows: "A cooperative may amend its articles of incorporation by complying with the following requirements: The proposed amendment shall be first approved by the board of trustees and shall then be submitted to a vote of the members at any annual or special meeting thereof, the notice of which shall set forth the proposed amendment. The proposed amendment, with such changes as the members shall choose to make therein, shall be deemed to be approved on the affirmative vote of not less than two-thirds of those members voting thereon at such meeting; and upon such approval by the members, articles of amendment shall be executed and acknowledged on behalf of the cooperative by its president or vice-president, and its corporate seal shall be affixed thereto and attested by its secretary. The articles of amendment shall recite in the caption that they are executed pursuant to this chapter and shall state: The name of the cooperative; the address of its principal office; the date of the filing of its articles of incorporation in the office of the secretary of state; and the amendment to its articles of incorporation. The president or vice-president executing such articles of amendment shall also make and annex thereto an affidavit stating that the provisions of this section were duly complied with. Such articles of amendment and affidavit shall be submitted to the secretary of state for filing as provided in this chapter. A cooperative may, without amending its articles of incorporation, upon authorization of its board of trustees, change the location of its principal office by filing a certificate of change of principal office executed and acknowledged by its president or vice-president under its seal attested by its secretary, in the office of the secretary of state and also in each county office in which its articles of incorporation or any prior certificate of change of principal office of such cooperative has been filed. Such cooperative shall also, within thirty days after the filing of such certificate of change of principal office in any county office, file therein certified copies of its articles of incorporation and all amendments thereto, if the same are not already on file therein."

Section 47, Title 18, Code 1940, reads: "Notwithstanding any other provision of this chapter, any proposition embodied in a petition signed by not less than ten percent of all members of the cooperative, together with any document submitted with such petition to give effect to the proposition, shall be submitted to the members of a cooperative either at a special meeting of the members held within forty-five days after the presentation of such petition or,

if the date of the next annual meeting of members falls within ninety days after such presentation or if the petition so requests, at such annual meeting. The approval of the board of trustees shall not be required in respect of any proposition or document submitted to the members pursuant to this section and approved by them, but such proposition or document shall be subject to all other applicable provisions of this chapter. Any affidavit or affidavits required to be filed with any such document pursuant to applicable provisions of this chapter shall, in such case, be modified to show compliance with the provisions of this section."

It is clear enough from the allegations of the petition that the members of the Pea River Electric Cooperative sought to change the principal place of office of the cooperative by the application of the procedure embodied in section 47, supra, which procedure was designed to accomplish entirely different purposes from that of changing the principal place of office of a cooperative.

Section 43, Title 18, Code 1940, prescribes the requirement for the consolidation of any two or more cooperatives. Section 44, Title 18, Code 1940, prescribes the requirements for the merger of any one or more cooperatives. Section 46, Title 18, Code 1940, prescribes the requirements for conversion of corporations to cooperatives. It will be noted that the foregoing code sections do not provide for the initiation, by members thereof, for the consolidation or merger of cooperatives, nor by stockholders for the conversion of a corporation to a cooperative. The underlying purpose of section 47, supra, is to give, and the section does give, to the members of a cooperative, and the stockholder of certain corporations, the right to initiate proceedings for the consolidation or merger of cooperatives, and the conversion of certain corporations.

Section 42, supra, specifically gives to a cooperative the right, without amending its articles of incorporation, upon authorization of its board of trustees, to change the location of its principal office by filing a certificate of change executed and acknowledged by its president or vice-president under its seal attested by its secretary, in the office of the secretary of state and also in each county office in which its articles of incorporation or any prior certificate of change of principal office of such cooperative has been filed.

We are clear to the conclusion that the legislature intended that the "initiative by member" embodied in section 47, supra, should apply only to the propositions of consolidation, merger and conversion as outlined in sections 43, 44 and 46, supra.

To hold otherwise would destroy the right of the trustees to authorize a change of the location of its principal office, which authorization is clearly conferred by section 42, supra, and we think exclusive.

No theory of estoppel can be invoked against the trustees under the allegations of the petition. They have never authorized a change of the principal place of office of the cooperative as is contemplated by Chapter 3, supra, of Title, 18, Code 1940. Moreover, the petition does not seek to compel action of the trustees, but action of the president and secretary of the cooperative.

The actions of the trustees, and of the members of the cooperative as outlined in the record, are simply without sanction of law and are a nullity. The authority of the members of a cooperative, and of the trustees, is purely statutory. No authority whatever is shown for the calling of an election by the trustees to determine the question of a change of the principal place of office of the cooperative. The parties have misconceived the law and its application.

Apt demurrer pointed out the defects in the original petition and the trial court erroneously overruled it.

Reversed and remanded.

BROWN, FOSTER and SIMPSON, JJ., concur.